Thank you. We'll now call Case 11-56594, Gonzalez v. City of Maywood. Counselor, if you just state your name and who you represent, that would be great. Good morning, Your Honor. My name is Paul Hoffman. I represent the plaintiffs in this case and the appellants. I'd like to reserve five minutes of my time for rebuttal, I hope. Well, if we're not giving you the business, you've got to take it. Okay. That's a deal. In the briefs, we've outlined numerous legal and factual errors with the judge's fee order. What I'd like to do is focus on three or four of those that we believe are legal errors that require the reversal of the order and a remand for a new order. The first one is the one that we have led with in the briefs, which is the impropriety of the judge imposing a proportionality cap on the fees. And obviously, the question that might come up is, in the order, he doesn't impose the proportionality cap. But I think anyone reading the January 2011 hearing would know that he used words that go pretty far in saying that there was no way that he was ever going to give us fees that exceeded our plaintiff's settlement in the case, which is an absolute improper limit on fees. And what he did with the methodology that he employed when he was finally forced to issue an order, because initially he said he wasn't even going to rule on it, he was going to force us to come back and flip the numbers, that as soon as we agreed to give our plaintiffs a million and we took 500,000, he'd sign the order and we should keep him advised about whether we were going to do that. What we did instead was we filed a petition to this Court for mandamus to force him to issue an order, and only then did he do it. And he came up with a methodology that is so riddled with errors under this Court's case law, and it's clear that the only thing that he did is he figured out the percentages that would get him under $500,000 and not look so obvious that it was 499.99. And so that's the first error, and that really is enough, it seems to us, to send it back down and hopefully to a judge that has not already made up their mind that they are going to disregard established law in this circuit and circuits around the country and in the U.S. Supreme Court in the city of Riverside. In addition to that, he made – Counsel. Yes. Judge, if I could interject. Sure. I would appreciate if you would keep the issue of the separation, keep separate for now, your request that we on remand get a different judge, because it raises a whole bunch of different issues. I'd say let's keep that a separate part of your argument in an appropriate time, take your shot on that, but for now when we talk about the problems with the fees, let's just limit it to that, because that's the first question we've got. Judge Gould, that's fine. I won't even mention it again. We've made it. We've made our argument. We won't say more. Did the district court ever make a finding that the rates employed in making these computations represented the prevailing market rate? That was actually my second point. The court never made that decision. We believe, and this goes more to an abuse of discretion, we put in a fee motion that complies with the way fee motions should be done and the way they're always done with an expert declaration, with copious declarations about the rates that we've gotten in the past, the rates that others have gotten in civil rights law in the relevant market, which is Los Angeles. The court found ways to disregard that, but actually the legal error is that he never actually made a finding about what the market rates were. Instead what he did is he said, well, you've asked for this, the defense have said this, and so I'll split the difference. And actually what he did in the order was another legal error, which he made a list of cases where lawyers had gotten much less money, and that's a legal error, too, because you're not supposed to use cases that deal with a different year from when you're asking the fees. We're entitled to current fees. Those cases are, I mean, relatively speaking, ancient in the sense that most of them, I mean, I think most of them are 14 or 15 years ago. We have no idea what kind of cases they are, who the lawyers were, what the evidence was, but at a minimum they're not current cases, and you can't use, you can't sort of cherry pick a few cases where lawyers have gotten less money long in the past and use that as the basis for your calculation. But didn't he arrive really at the rate by averaging the rates at the high end between the plaintiffs and the defendants? That's kind of what he did. And then started reducing after that. Well, in terms of the rate, what he did actually was he took the rate that I was asking for and he took what he perceived to be the rate that the defense was asking for, but actually what the defense said was higher than that. He took actually the rate in the Dang case, which is a case that relates to 10 years before in terms of it. And he split the difference. Well, it's the case we have. And then he split the difference, made an average. He split the difference for me, and then he used the same percentage reduction for everybody. Except for paralegals where he just took it all to the lower level. And so the legal error among other things. Did he ever make any comparison between the rates in the middle end of the attorney's range and the middle end anyplace else? I didn't see it. He didn't. I mean, he just didn't do it. He basically did that, split the difference, did it for everybody, no matter who they were, no matter what the rates were, no matter what the evidence was. That's what he did. And that lopped off about $700,000 from our load start, the actual load start, which was a little over $2 million. We only asked for $1,025,000 because in the settlement we had agreed to limit. So we took a 50% haircut going into the case, even before the first paper was filed. Apart from the rates, the next thing that he did, and this is, I think, probably the even more egregious thing that he did, was he went through and made all these percentage reductions in hours. And you start out with them probably. I'm not sure he did it in hours. My worry was that he multiplied the hours by the rate he came up with and then made the reduction in the amount. Well, what he did is he got to $1.4 million by reducing the rates. And from the $1.4 million, he then started lopping off more because of the perceived problems with the billing, some of which probably were covered by the rate reductions under his theory anyway. But even if he said that it was completely separate, all he did was he found some what he perceived to be errors. Some were errors. Some were not errors. And then based on a handful of errors in each category, he came up with an arbitrary percentage because there's absolutely no basis for the percentage. And the worst one in a lot of – yes? I'd like to ask you a question on that. Assuming for sake of argument that we're going to give relief here on the fees, what would you say our order should tell the judge as to how he should approach market rates? I'm assuming we're not just going to tell him to give you all the rates you asked for. What's the finding specifically that we should tell him or ask the district court to make? Well, I think what the law requires is that he make a finding of the market rate for lawyers of comparable skill, experience, and reputation for each lawyer. Okay, that part I understand. What about their? As to ours, exactly what do we tell them to do on ours? I mean, surely – well, I don't know surely, but it doesn't seem entirely reasonable to ask a district court judge to look at every entry for every day and make a – you know, hold a mini-hearing about how many hours the lawyer or paralegal worked that day and make a finding. That can't be done. Well, how do you approach ours? I noticed there were some legitimate hours issues that he was concerned about. Just, for example, a paralegal, you know, billing 60 hours or 20 hours in a day and whether certain kinds of work, like the clinic work, he didn't think should have been billed. So how is he supposed to approach ours? Well, I think what the Moreno case says primarily, I mean, there are other cases too, is that if you perceive a particular problem in the billing or problems in the billing, it's appropriate to come up with a percentage, usually not more than 10 percent, that deals with those problems. If you go beyond – Well, and just a minute, it seems to me that it's not 10 percent, but if you're doing more than 10 percent, you better have a basis. Right. No, I was about to say that if it is more than 10 percent under Gates and Moreno, the burden of clear statement becomes much larger. And I think in this case it's important to note that when you put all these things together, he took our hours from approximately 4,300 hours to something like 1,500 or 1,400 hours, and that winds up being some minuscule percentage of the hours that were billed by the defendants, which is another legal error that we have argued. We got the defense counsel's billings. We presented them to the court. Defense counsel worked 17,000 hours on this case. They got paid $3 million to do that. Now, we understand that there are cases that say that there's no automatic comparison. And we accept that. But when the court has said that it should only have taken us 1,400 hours as compared to 17,000 hours, something is wrong. And it's clear that when you look at this case, there's pleadings. Whether you should have done them better, there's still – you have to make them. And he told us to make them in eight cases. So is it your position with regard to defendants' fees that the trial court would abuse its discretion not to consider those? Yes. Our position is that they should at least be part of the decision-making, particularly in a case where the court is challenging the reasonableness of our hours. I mean, there are certain tasks that were done in this. This was a hotly litigated case. There were eight different cases. There was investigation. There were 53 depositions that the defendants took, thousands of discovery requests, you know, tens of thousands of documents that were produced and needed to be reviewed. It is just absurd to say that the plaintiffs with the burden of proof to put this thing to trial, when we settled on the verge of the first of eight consecutive trials, only could spend 8 percent of what the defendants did. When you have that disparity, and I think what that leads you to is the overall purpose of all of the Ninth Circuit's cases in this is to come up with a reasonable fee, right? I mean, Congress passed this statute so that there would be a reasonable fee so that people like me and my colleagues would take these cases, which are highly contingent, very difficult to try, very difficult to deal with, very hard to settle. And if you get treated like this, after settling a case for $500,000, and I would say, by the way, there is no basis in the record that that's not a good settlement. This was a good settlement. Our clients were very happy with this settlement. They decided that they would settle this case rather than going through eight trials and waiting for years for their money and having their houses foreclosed. This was a good settlement. You know, when the judge says that we ripped off our clients or something, I don't know where he's coming from. There's nothing in the record like that. The record says he had no evidence in this case to say those things. Counsel, did you want to save some time for us? Yes. Yes, Your Honor. Thank you for saving me from myself. Counselor? He's saving the rest for rebuttal, as I understand it. Good morning. My name is Richard Simone. I represent all but two defendants, but my comments this morning will begin with regard to all defendants. I am reserving five minutes' time for my co-defense counsel. Well, that's up to you. We're not limited by that, but we'll let you go. Thank you, Your Honor. As a threshold matter, I want to make one opening statement brief and then address a couple things that were raised just previous. As a threshold matter, these cases were poorly litigated, and that's why there were a lot of charges that needed not to be the plaintiff's counsel needed not to be reimbursed for their time. This was cases that originally were filed in May of 2007. They did not get to an operative complaint until September of 2009. The case only litigated for less than one year after that. Up to that, we had claims of RICO. There was consolidation. Originally, there were not eight cases. There were nine cases. One of the cases were dismissed. The – you know, our formal briefing establishes the number of defendants that – excuse me, the number of plaintiffs and claims that were reduced. A lot of times – a lot of time was inappropriately spent litigating until we get to a place where we can actually bring it forward.  Yes, Your Honor. It seems to me that if all that's true, it's still necessary for a district court to come to a reasonable lodestar figure. In other words, figure the market value of the attorney's rates, figure a reasonable amount of time on the case, come to the lodestar. And then if the judge wants to reduce that because of bad results or the reasons give, you know, give a reasoned statement as to why the reduction is being made. So don't we first have to start with did he make a mistake in computing the market rate for the lawyers and did he make a mistake in reducing the amount of time because of the ways he did it? Thank you, Your Honor. I would suggest that the trial court did not make an error. You know, the prior – Well, if he didn't make an error, where do I ever find that he made a finding about a prevailing rate? I mean, in my book, he arrived at whatever he came up with by averaging the rates at the high end of attorney's fees between the plaintiffs and the defendants, and he found that was 25 percent higher than the high end, and so therefore he reduced everything 25 percent. But I never saw a prevailing rate made. Thank you, Your Honor. This is actually a point that I wanted to address. The court did – the court first looked at what the Plato's counsel filed. Where did he say this is the prevailing rate? Where did he ever say that? Where did he ever find it? In section – Where did he ever find a rate on the middle level of attorneys? Let me tell you what the court said and what they were doing. Okay. Give me the record. Where is it? I apologize. I cannot tell you the record. I don't have it for me, but I can tell you in the order. It is under section 5A4, and the court cites Bedman v. Receivable Management Services Corp., and quotes – cites this quote. When a fee applicant fails to meet its burden of establishing the reasonableness of the requested rates, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. I agree. That's what he said, but that's the best. Then he never did go back and say this is my experience. Then what the court did was actually very generous. What the court did, after saying the plaintiffs had failed to meet their burden of establishing the rates they were requesting, the court still went back to those rates and said we're going to adjust from there. The court was – at that point was empowered to say – come out with a pronouncement and said the rate, the appropriate rate based on the court's experience is $300 an hour. That would have been fully appropriate. The court didn't do that. The court did something better for the plaintiffs. It said they didn't meet the burden. However, I'm going to start with them and I'm going to average between them and what the other evidence is of what the prevailing rate is. So I'm going to give you plaintiffs more than what the evidence is, and I'm going to divide it between what we show is the prevailing rate and what you're requesting. So we're going to give you something in between. That was generous. When I looked at your expert's affidavit, I thought he had 450 as the high end, not 400. He did. But the court – Judge Wright also indicated in his order that because there had been a motion by plaintiffs that the – that declaration not be considered, the court did consider it, but said they did not need to rely upon it. They did not rely upon it. So your argument is one says you don't meet the burden, so you don't ever have to set a prevailing rate. You can just go with whatever they did on that and just reduce everybody in the scale 25%. Well, it wasn't – two things. One is it wasn't everybody. It was only attorneys. The paralegals were given – Well, the paralegals, I can't even figure out how he selected the lower paralegal rate. The court says that. I don't know why he did. The court says the – the judge Wright says that he gave the paralegal rate, the low paralegal rate that was in the declaration of Mr. Litt. Why did he do that? Why did he do that? I can't find it. I don't know why he did it. I tried to find out because I was going to say the paralegals are okay. Plaintiff's expert said the range is between here and here, and after he said Mr. Litt's declaration is not credible, he still gave something within that range, and the plaintiffs are complaining. Well – That was the range that was requested by the plaintiffs. The judge gave them that range. That's what Mr. Litt's declaration said. Again, I don't know how the plaintiffs can complain that they got something The attorneys' rates was based on, in part, unsubstantiated. They did – the plaintiffs have not met the burden of staffs to the rates they wanted for their attorneys. The court still used that as one of the two numbers for averaging, and then gave the low end of the rate that Mr. Litt, their expert witness, said was the appropriate rate, even after he said Mr. Litt was incredible. You do agree, I guess, that if one had ever set a prevailing rate, one could reduce the rate for overbilling and poor results. Correct. That's in Van Guren that that happens. So if he ever set a reasonable rate on what was done, he could go back to that rate and reduce it, correct? Yes, Your Honor. But my worry is I don't know where he ever did that. I think that when he comes out with his chart and he's got – Paul Hoffman had the old rate, 750, and the new rate, 562.50, and he goes down through all the counsel. I think that's – that was the court's – the court is correct here that Judge Wright never says, and this is what I find to be the prevailing rate. He doesn't use that sentence. But to my reading of it, it's clear that he ends up saying this is what the rate  is. He's already explained how the court can establish what the prevailing rate is. Then he says, here's what I find the appropriate rate is. Did he ever in his order give me any justification why he selected the specific percentage that he was using on reducing the load star hours, which I'm not sure was the load star hours because, frankly, he took the rate he came up with, multiplied it by hours, and then took reductions of the total. But did he ever give me any justification for selection of those specific percentages that he used? I'm sorry. When you say the percentages, you're talking about after the following – after he set the rate – Right, right, right. I believe so because my – But where is it? Where does he say how he got off of 25 percent, 23 percent, 28 percent? Oh, I apologize, Your Honor. I misunderstood the question. No, the court does not say, I reached 10 percent as opposed to, say, 15 percent for this reason. That is correct. But – Doesn't he need to? So I can see whether it's worthwhile or whether I need to say he had – I mean, I appreciate this is an abuse of discretion. And, in fact, I've been in this situation before. But when it's an abuse of discretion, he at least has to use the factors that are used so he can make that abuse of discretion decision. And that's why I'm trying to find the basis. If I can find basis, I can do something. I – my reading of this is that the court is not – the courts are not required to establish, if a reduction is made, the court articulates a basis. What's Hensley v. Eckerhardt say? It says where the documentation is inadequate, the court may reduce the award. However, and go on to the other cases which then interpret Hensley, if it's going to give more than a 10 percent reduction in their discretion, they have to give basis. And I think the Court in each instance has done that by saying I'm reducing because we found that there were errors. There was impossible or irregular billing or, you know, there was overbilling where clearly someone can't work more than 24 hours in one day. The Court does that. But if I understand this Court's focus, the indication – the Court seems to be asking how – if Judge Wright ever says it's 10 percent, not 15 percent for this reason. And I don't believe that the Court is required to make that specific distinction. Let me ask you another question. Where do I find any – I don't find any reason why he gave no fee for their working on the application for the fees. I mean, he just cut that out. He denied the application for the fees for the hours worked on the fee application. We've said in Anderson typically you give that. If you don't, tell us why. And he didn't. He just said no. I – the record is unclear. I can suggest what I believe the reason would be, but I cannot put words in the mouth of Judge Wright. I thought I read somewhere – and I might be wrong, but I thought I read somewhere that he said something about the problems. Because of the problems he saw in the submissions, he wasn't going to give fees on fees. No, exactly. He spoke – no, Your Honor, you're correct. He did generally talk about the poor quality of the motion, but that is the justification he provided for not providing fees. Essentially, you know, my read on it was the motion was so inadequate, you're not entitled to fees. Where do I know? Go ahead. The way that struck me was that you are entitled to fees on fees if you're a plaintiff in some amount, and the quality of the motion would be a basis to reduce the fees on fees, but that there should be a number that covers – in other words, that if he thought they did a bad job on their application, that might be a reason to cut their fees on work on that down by such and such a percentage, giving reasons. But I didn't see what precedent there could be for saying you get no fees on that. And like you, Your Honor, I didn't see that Judge Wright indicated a precedent for that as well. What did he do about the multiplier? Well, he didn't even address it, did he? He didn't utilize multiplier. My recollection was that a multiplier was not requested. A multiplier is available for exceptional work, something above and beyond, where an attorney does something, perhaps a unique nature of the work or something specifically very testing. And Judge Wright's comments, if I remember correctly, generally indicated that he thought there was nothing typically unusual about this case. I guess I didn't even think he addressed it. I'm not certain they'd get a multiplier, but I don't think he talked about it. I don't. But also, Your Honor, the multiplier was not requested in the original motion, so I think that's why the court never addressed it. How about the corrected figure that they sent him? I couldn't even find that the district court even looked at the corrected figure or even acknowledged its submission. It was like it went off into thin air. You know, the corrected figure involved approximately $123,000. I understand, but somebody ought to address it, hadn't they? Well, I think that's incumbent on the plaintiff to go through the proper process. They didn't bring a motion to request that it be considered. And I think that was the rationale for not ñ if the plaintiff has not done what the plaintiff needs to do in that regard. Well, I've kind of asked you a lot of questions, and so have we all. I'll give you a minute to sum up, because we're kind of at the end. Do you want some time? I could just have a couple minutes, Your Honor. Sure. Why don't you come and give us a minute? Thank you, Your Honor. Good morning, Your Honor. It's Brian Kagan, appearing on behalf of the Finance Cunningham and Murillo. Just addressing that one issue of the fees on fees, the Court, in their order, which is at ER 26, the Court found that the plaintiff's billing irregularities permeated their fees motion. And it was replete with errors, like by not listing fees by case, by billing with ñ including billings that were unrelated to the case. They were charging for public relations and clinics. They were ñ they had paralegals billing 23-plus hours a day. They were billing for clerical time. That's the reason why the Court didn't order any fees on the fees, because they said this motion was poor. This motion was replete with errors, and the Court found it almost impossible to go through the documentation that was provided because of all the errors. To me, the gist of the plaintiff's appeal in this case is an attack on the judge's ñ on the trial judge's motives. They ñ he did ñ the judge did do a detailed, thorough and cogent analysis. They can disagree with certain aspects of it. You know, I think the fees that they awarded the plaintiff's attorneys, $562 an hour and $487 an hour, are reasonable. And that's really the key, is whether the fees are reasonable. And the Court, I believe in this case, came up with a reasonable hourly fee for the work that was performed. But there's really ñ I mean, we're not sitting here saying you could just say whatever you think is reasonable. We say you have your discretion, and you ought to take it, and you ought to decide. And then ñ but this is how you do it. You set a fee in the community on the reasonable scale. You set that fee based on what you determine to be that. And you do it for all the different lawyers and or paralegals that are involved. And then you can take away from it for certain things. Or you can not take away from it for certain things. And then you come up with the hours, and you can take away from them for certain things. And then you can add it up, and that's what the fee is. But we don't say just throw out for crapshoot whatever you want to put together, and then say that's reasonable, and we have to ñ and we're supposed to bless it. I mean, I'd love it. I was a DJ. I had to go through these kind of things all the time. I'd love it if I could just say, well, whatever I think's good, and you say your discretion, do it. But that didn't happen here, did it? He didn't go through the procedure. Well, the Court did use a methodology. They took $400 as the low high. They took $750 as the high high on the fees, and he cut the baby, so to speak, and came up with a middle. But really, that was his methodology. But the issue is whether the fees that were actually awarded on an hourly basis are reasonable, and that's ñ I don't think the burden's on them to show that they're ñ That's the ultimate goal of what we're dealing ñ looking for here. But still, as an appellate court reviewing for abuse of discretion, I have a little trouble seeing how we can assess that without the kind of explication by the district court, step by step, of the kind of factors Judge Smith's raising. You know, like, I don't view it as that complicated. You say, okay, first, what's a market rate? Second, what's a fair number of hours? Taking the hours they logged, adjusting them for any legitimate reasons, and you get a load star, and then deciding if that's got to be modified based on other reasons. But given those reasons, and I don't really see that he did that here. Your Honor, I do feel the Court did go into detail on each of the reductions on the hourly fee that he ñ that he awarded and the amount of hours and the reasons for the reductions. He did go in ñ I feel like the Court did go into detail and explain why he made the decisions he did. And again, part of it was, is that he basically exposed their motion as being a very poorly drafted motion, where they just lump in all of these fees together, all the cases together, and expect the Court to try to sort it out. And I think it was the Court's exposure of the poorness of the motion is that then it created the underlying issue that they're going on, is that the judge somehow was biased against them. Do you want another point I'd like to make, Your Honor, is that ñ Well, you've kind of gone over already. I mean, I've let you go quite a bit over. I'm giving him another minute because I'm feeling like I really let you two have the ñ Thank you. Have your head. Go ahead. You've got a minute. Thank you, Your Honor. Or did you have a minute 57? Yes. Oh, well, then he got two minutes. Well, Your Honor, I don't want ñ I can't address very much in that. But obviously, we think the judge violated the clear statement rule in all sorts of ways, and that he has to go back. I would say that, one thing, this was not a poor motion. I mean, there may be some mistakes and things that needed to be out of it. But the Court can look at the motion. We had an extensive motion with billing records that were very detailed. You know, I understand that the Court could say that some of it was, you know, readjusted within the established rules. But it's just wrong to say that that's the case. And if you look at the numbers and compare the defendants and ours, you know it's not a reasonable fee. And the judge should be instructed, I think, to look at that and consider that. And one other thing, just to ñ I hope you're not really going there because I don't think you can find a case that says he's got to look at the defendants' hours. But I understand your argument, but you can't find a case that says he's got to. I think we did cite cases. Well, I looked, and I couldn't find one that says he's got to do it. This is a discretionary decision. Go ahead. Make your argument. Let me just ñ You'd like our panel ñ Excuse me? You'd like our panel to make the law that says he's got to do that. That would be good. Let me just finish with one last point, and just to illustrate where I think some of the problems are. The judge said ñ took 35 percent or $500,000 off of the fees because he said that we build ñ we didn't divide up by cases. Well, there was a good reason for not dividing up by cases. It was shown they were all treated together. There were Manel issues that were common to all. Everybody worked on these things. It was perfectly reasonable. And I would just say on remand, instead of saying I'm going to take $500,000 and 35 percent off the top of all hours, the judge could have just said, well, I don't think that's a reasonable way to do it. Could you please break this down by case for me? Instead of saying, well, I'm not going to rule on your motion until you give your plaintiffs $500,000 of your money. He could have just done that. On remand, he can still do it. We can do it by any way he wants us to do it. We can do it. There's no way that, given the context of this case and everything that happened and the results we got for our clients, that more than a 50 percent haircut is appropriate for a reasonable fee. And I would say that this Court, looking at these materials, actually could make that decision on its own and say that we're entitled to the $1,025,000. I realize the Court may not want to do that, but I think you could on the showing that we've made and all this. I think you could easily find that, given all the factors, we're entitled to the fee that we've requested. And I would submit on that, Your Honor. Thank you. All right. Case 11-56594, Gonzales v. Maywood, is submitted. And court is adjourned for another day. Thank you very much. All rise. This Court stands adjourned.
judges: Gleason, Gould, Smith